## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

COURTHOUSE NEWS SERVICE,

Plaintiff,

v.

ZABRINA W. DEMPSON, in her official
capacity as the Clerk of Superior Court of the
District of Columbia,

Defendant.

Case No.: ___1:24-cv-726___

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF**

Plaintiff Courthouse News Service ("Courthouse News" or "CNS"), by and through its undersigned attorneys, alleges as follows against Zabrina W. Dempson, in her official capacity as the Clerk of Superior Court of the District of Columbia ("Clerk Dempson" or "Defendant"):

### INTRODUCTION & ACCESS BACKGROUND

1. Courthouse News is a nationwide news media outlet that, among other things, reports on newsworthy civil filings throughout our nation's court systems. Its ability to report news in a manner that has value for its readers hinges upon quick access to court records. On-receipt access to civil complaints is particularly important because a complaint is the initiating document in a case. When newsworthy cases "break," the story is contained in the complaint. The automatic restrictions preventing access to civil complaints, described herein, deprive the public of such "breaking news." Courthouse News brings this lawsuit because Clerk Dempson's policy that requires clerk "processing" of complaints before they are made public, results in the withholding of access to newly filed civil complaints in the Superior Court of the District of Columbia ("D.C. Superior Court"), causing delays in public access to court records in violation of the First Amendment to the United States Constitution.

2.      Since time beyond memory, the press has reviewed new civil complaints when they crossed the intake counter in American courts. That tradition was perhaps best described by United States Court of Appeals Eighth Circuit Judge Bobby Shepherd in 2022 oral arguments in a case filed by Courthouse News in Missouri involving the same issues as here: "There was a time when – and some in this room may remember it – when you took a pleading to the courthouse and the clerk stamped it physically and it went into different bins and it was available immediately."

3.      Civil disputes can make big news. Recent examples include antitrust actions filed against Google over its alleged dominance of internet advertising, a contract action brought by Elon Musk alleging OpenAI violated its promise to develop open-source software, and E. Jean Carroll's defamation lawsuit against former President Donald Trump that resulted in a $83.3 million jury verdict. Another high-profile defamation case in D.C. Superior Court filed by climate research scientist Michael Mann recently resulted in just over a $1 million jury verdict. Such cases generate significant national news interest.

4.      Less publicized civil disputes generate news at the local level. Readers can find a wide variety of new actions newsworthy for many reasons – the parties or attorneys involved, the nature of the suit, the issues involved, or the factual allegations. New civil complaints have been and continue to be a rich source of news.

5.      During the transition from paper to electronic court records, federal courts and many state courts kept in place the age-old tradition of access. But some trial court clerks and administrators abandoned it. They restricted access to new electronically filed ("e-filed") complaints until the complaints were later entered into the public case docket, delaying access

and damaging the news. That group now includes Clerk Dempson's office, which implements and oversees the e-filing process for D.C. Superior Courts.

6.      Upon information and belief, D.C. Superior Court first began formal implementation of e-filing in certain civil cases at least as early as May 2005, using a system known as CaseFileXpress or File & ServeXpress. Mandatory e-filing requirements and procedures in such civil cases were set forth in an administrative order issued that same year. *See* D.C. Super. Ct. Admin. Order No. 05-04, eFiling With IJIS Implementation (May 17, 2005).[1] Civil e-filing requirements were soon expanded to include additional civil case types in 2007. *See* D.C. Super. Ct. Admin. Order No. 06-17, Mandatory eFiling in Civil Division (Oct. 23, 2006). In 2015, the D.C. Superior Court specifically mandated that complaints in over seventy (70) civil case types be efiled.  *See* D.C. Super. Ct. Admin. Order No. 15-03, Mandatory eFiling of Complaints in the Civil Division (Feb. 13, 2015).

7.      On or about October 31, 2022, the D.C. Superior Court transitioned to its current system, eFileDC,[2] and e-filing was re-affirmed as mandatory for civil cases (except for pro se litigants and certain exempt entities) the same day. *See* D.C. Super. Ct. Admin Order No. 22-30, Mandatory eFiling Civil, Probate, and Tax Divisions (Oct. 31, 2022) (vacating, among others, previous administrative orders governing e-filing including those identified in paragraph 6, above).

---

[1] A pilot e-filing program was established in D.C. Superior Court as early as May 2001. *See* D.C. Super. Ct. Admin Order No. 01-06, Order Establishing and Governing the Use of Electronic Filing (Mar. 16, 2001).

[2] *See* eFileDC, *available at*: https://efiledc.tylertech.cloud/OfsEfsp/ui/landing (last visited March 13, 2024).

8.      eFileDC runs on software called Odyssey File & Serve. In 2019, D.C. Superior Court contracted with Tyler Technologies, Inc. ("Tyler") to provide a suite of software applications on the Odyssey platform.  It began using Tyler's Odyssey eFile & Serve application for civil cases in October of 2022. As Clerk of the D.C. Superior Court, Clerk Dempson is responsible for the administration of eFileDC, which includes ensuring public access to e-filed complaints.

9.      In October 2023, after observing over time the delay between when new nonconfidential, civil complaints are filed and when they become public, Courthouse News wrote Clerk Dempson and requested she implement one of three methods that Tyler offers to make complaints publicly visible at the time of their filing. Stated another way, Courthouse News presented three ways to provide the public access to newly filed civil complaints upon their receipt by a court. A copy of that correspondence is attached as **Exhibit A**. The first is Tyler's Press Review Tool ("PRT," also referred to as a Press Review Queue) for access to newly filed civil complaints. The PRT provides access to new non-confidential complaints when received by an E-File Manager ("EFM"), which is a storehouse for complaints submitted through eFileDC. The complaint as submitted by the filer resides in this EFM document repository. The PRT permits the press and public to review new, non-confidential complaints in the EFM once they have been received from the filer.

10.     Clerks perform their work through a similar application, a Clerk Review Queue. There, clerks review a copy of each complaint held in the EFM, perform a series of administrative steps called "processing," and add complaints to the case management system (the docket), as their schedules permit. Under Defendant's current policy, the press and public are restricted from seeing the new non-confidential complaints until after they have been processed and put in the docket, work which regularly takes one to three days.

11.     The PRT would mimic traditional public access to new civil complaints, *i.e.*, access on receipt, because it works very much like the traditional box on the clerk's intake counter that historically held new paper-filed complaints for public view.  Traditional inboxes were made of wood, wire, or cardboard. The PRT is the same thing but in electronic form.

12.     The PRT is readily available to any court clerk or administrator who requests it from Tyler, generally at a yearly cost which can be recouped when clerks charge a fee for remote access, similar to PACER in the federal courts. Tyler has installed the PRT for other courts operating the Odyssey File & Serve software platform used by Defendant.

13.     The PRT is not the only alternative available to Defendant for satisfying her constitutional access obligations. Tyler also offers "Auto-Accept Review",[3] with no additional charge to the court customer. The auto-accept option allows Odyssey File & Serve courts to automatically place new complaints into the public case docket and process them afterwards. This Court and most federal courts use this type of system. Tyler also offers an Application Programming Interface ("API") that allows Odyssey File & Serve courts to independently program software to provide press and public access on receipt. The API also comes from Tyler without an additional charge.

14.     As of this filing, Clerk Dempson has not responded to Courthouse News' letter attached at **Exhibit A**.

15.     Using a panoply of e-file software vendors and home-grown software, the following states provide traditional access on receipt, either remotely or at the courthouse, when new e-filed complaints cross the digital counter: Alabama (statewide), Arizona (statewide),

---

[3] *See* Tyler presentation*, available at:*
https://www.efiletexas.gov/documents/eFileTexas%20PRT%20vs.%20Auto-Accept.pdf (last visited March 13, 2024).

California (nearly all e-filing counties, which cover approximately 85% of the state's population), Connecticut (statewide), Florida (statewide), Georgia (in Atlanta metropolitan area), Hawaii (statewide), Nevada (Clark County/Las Vegas), New York (statewide), Ohio (Columbus, Cleveland), Texas (Austin), Utah (statewide) and Vermont (statewide). Further, the following states have settled First Amendment litigation by agreeing to pay attorneys' fees and provide on-receipt access to newly e-filed civil complaints: Missouri (statewide), New Mexico (statewide) and Iowa (statewide with settlement agreement in the process of being signed). In addition, the overwhelming majority of federal courts, including this Court, provide access to new civil complaints when they are received.

16.     Clerk Dempson could use any one of the alternatives described above offered by Tyler as a means of providing access to new civil complaints filed through eFileDC. But Clerk Dempson instead enforces a "no-access-before-processing" policy, which keeps the existence of new lawsuits secret until she chooses to disclose them.

17.     As a result of this policy, Clerk Dempson restricts access to newly e-filed civil complaints from the press and public until after they have been "processed" by staff as their schedules permit, effectively sealing them during processing, resulting in delayed access. If left to stand, this policy will result in the ongoing denial of the press' and public's qualified First Amendment right of on-receipt access to civil complaints.

18.     Since implementation of eFileDC, Courthouse News has experienced substantial and continuous delays in obtaining access to newly e-filed civil complaints, with over half withheld between one to three days — or more. This is despite the Clerk's statement in its Portal FAQs that "Case summaries (previously called docket information) and document images are available

within minutes of being input or scanned into the court record. However, document images may not be available immediately."[4]

19.     Courthouse News brings this action under the First Amendment of the United States Constitution to address constitutional wrongs, seek declaratory and injunctive relief, and to challenge Defendant's policy and practice of restricting public and press access to newly filed civil complaints in D.C. Superior Court that are e-filed through eFileDC, which operates under the control of Clerk Dempson. Public access is restricted until after administrative "processing" occurs.

## PARTIES

20.     Courthouse News is a nationwide news service founded almost 30 years ago out of a belief that a great deal of news about civil litigation went unreported by traditional news media, a trend that has only increased in the last decade. Courthouse News now employs approximately 235 people, most of them editors and reporters, covering state and federal trial and appellate courts in all 50 states in the United States.

21.     Zabrina Dempson is the Clerk of the District of Columbia Superior Court and is named as a defendant solely in her official capacity. Clerk Dempson is responsible for, among other things, the administration of eFileDC, and for public access to D.C. Superior Court records through that system, including through any systems licensed from or otherwise provided by third parties, such as Tyler.

22.     Clerk Dempson and those acting under her direction and supervision are directly involved with and/or responsible for the restrictions on access to newly e-filed civil complaints

---

[4] *See* Portal FAQs, *available at*,
https://www.dccourts.gov/sites/default/files/portal/Portal_FAQs_2022.pdf
(last visited March 13, 2024).

experienced by Courthouse News and other members of the press and public in D.C. Superior Court. These acts reflect the official policies and practices of Clerk Dempson's office. Courthouse News seeks relief against Clerk Dempson as well as her agents, assistants, successors, employees, and all persons acting in concert or cooperation with her or at her direction or under her control.

23.     Defendant's actions, as alleged in this Complaint, are under the color of state law and constitute state action within the meaning of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

## JURISDICTION & VENUE

24.     Courthouse News' claims arise under the First and Fourteenth Amendments to the United States Constitution and the Civil Rights Act, Title 42 U.S.C. § 1983, *et seq.* This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights), and 2201 (declaratory relief). Defendant is subject to personal jurisdiction in this District.

25.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Courthouse News' claims occurred in this District. The First Amendment violations giving rise to this action took place, and continue to take place, in this District, and Defendant is located within this District as well.

## FACTS

### Courthouse News' Reporting Activities

26.     Courthouse News offers its readers a variety of publications. Courthouse News publishes a free website, www.courthousenews.com, featuring news reports and commentary read by roughly 30,000 people every weekday. The website functions like a daily newspaper, featuring staff-written articles from across the nation, posted throughout each day and rotated off the page on a 24-hour news cycle. On a subscription basis, Courthouse News publishes the *Daily Brief*

covering opinions from all state and federal courts as well as significant rulings from federal district courts. Also on a subscription basis, Courthouse News publishes *New Litigation Reports* containing original, staff-written summaries of significant new civil complaints, sent to subscribers via e-mail each evening.

27.    Courthouse News has been credited as the original source of reporting on various topics by a wide range of publications, such as: *ABA Journal*, ABC News, *The Atlantic*, *Austin American Statesman*, Black Christian News Network, CBS News, *The Christian Science Monitor*, The Daily Beast, *The Dallas Morning News*, Forbes, Fox News, *The Guardian*, The Hill, *Houston Chronicle*, The Huffington Post, *Los Angeles Times*, *Mother Jones*, National Public Radio (NPR); NBC News, *New York Daily News*, *New York Magazine*, *The New York Times*, *The Orange County Register*, POLITICO, *Rolling Stone*, *Salt Lake City Tribune*, Slate, *The Telegraph* (UK), *The Wall Street Journal*, *The Washington Post*, *The Washington Times*, *Women's Health Policy Report*, United Press International (UPI), *USA TODAY*, *U.S. News & World Report,* and the YouTube news channel. American, Canadian, and New Zealand radio shows have also interviewed Courthouse News reporters.

28.    Courthouse News has more than 2,200 subscribers nationwide, including law firms, law schools, government offices, and news outlets such as: The Associated Press, *Austin American-Statesman, The Atlanta Journal-Constitution*, *The Boston Globe*, BizWest Media, BusinessDen, Center for Public Integrity, *Chicago Tribune*, CNN, *The Dallas Morning News*, Denver Post, *Detroit Free Press*, Fox Entertainment Group, *Honolulu Civil Beat,* International Consortium of Investigative Journalists, iHeart Media (radio), *The Guardian*, *Las Vegas Review-Journal, Los Angeles Business Journal, Los Angeles Times*, NBC News Digital, North Jersey Media Group, *Pacific Coast Business Times,* Pinterest *(social media), Philadelphia Business*

*Journal, Phoenix New Times, Plymouth Independent Portland Business Journal, St. Paul Business Journal, The Salt Lake Tribune*, *The San Jose Mercury News, San Antonio Express-News*, *Seattle Times*, *Tampa Bay Business Journal*, *The Wall Street Journal*, The Walt Disney Company, Warner Bros., *The Washington Post*, and *Willamette Week*.

29.     Courthouse News' academic subscribers include Arizona State University, Baylor College, Boston College Law Library, Boston University, Columbia Journalism Investigations, Drake University Law Library, Florida International University, MIT School of Management, Neumann College, Nova Southeastern University, Stanford University, University of Arkansas Little Rock Law Library, UC Hastings College of Law, UCLA School of Law, University of Chicago, University of Colorado, University of Maryland College of Journalism, University of North Carolina at Chapel Hill, University of Pittsburgh, University of South Florida – Tampa, University of Virginia School of Law, Wake Forest University, and Weber State University.

30.     Despite its reach, Courthouse News remains a small company. At great expense, it has undertaken litigation against large state bureaucracies that are using publicly funded litigators to deny the tradition and the right of access.

31.     The *New Litigation Reports* published by Courthouse News that cover the District of Columbia include the *Washington D.C. Report*. This publication covers civil complaints, focusing on actions brought against business institutions and public entities.  The *Washington D.C. Report* covers the following District courts/entities: (1) this Court; (2) D.C. Superior Court; (3) D.C. Court of Appeals; (4) U.S. Court of Appeals for the Federal Circuit; (5) U.S. Court of Federal Claims; (6) Judicial Panel on Multidistrict Litigation; and (7) International Trade Commission. Courthouse News reporters do not cover family law matters, name changes, probate filings, most

mortgage foreclosures, or collection actions against individuals unless the individual is well-known or otherwise notable.

32.     Courthouse News does not seek to review or report on the small number of new civil complaints that are statutorily confidential or accompanied by a motion to seal for a judicial determination of whether the complaint should be confidential. Such complaints are screened from public access by the Odyssey File & Serve software.

33.     The *Washington D.C. Report* is emailed to 101 subscribing institutions on weekday evenings.  The subscribers are made up of 98 law firms, including many of the biggest in the nation, and three media groups, *KFF Health News*, The Center for Public Integrity, and The International Consortium of Investigative Journalists.

34.     To prepare the *New Litigation Reports* and identify new cases that may warrant a website article, Courthouse News reporters review complaints filed with their assigned courts to determine which are of interest to Courthouse News' readers. Given the nature of the coverage in the *New Litigation Reports* and its other news publications, including its website, any delay in the ability of a reporter to obtain and review new complaints necessarily holds up the reporting on legal controversies for readers.

35.     Since at least 2005, Courthouse News has reported on new civil complaints filed in the District of Columbia, when it started covering federal and local courts within the district.

36.     Courthouse News' request to Clerk Dempson never bore fruit, and she continues to restrict access to new e-filed complaints past the point of filing until they have been "processed," resulting in substantial and ongoing access delays. In fact, since August 31, 2023, almost 60 percent of e-filed complaints have, on average, been withheld from access a day or more.

11

37.     These delays have real and direct impact on Courthouse News' ability to timely report the news. Litigation in the District of Columbia is a rich mix of extraordinarily varied disputes involving alleged harms to individuals and businesses. Many are of interest to local readers of local publications centered on local news, but they were in effect sealed the day they were e-filed. Recent examples include: (1) former NBA player Vladimir Radmanovic suing a financial/tax management firm alleging it failed to properly file tax forms on his behalf resulting in over $200,000 in IRS tax penalties (*see Radmanovic v. SFX Financial Advisory Mgmt. Enters., Inc.*, 2024-CAB-00111); (2) well-known conservative lawyer Larry Klayman filing suit against the Board on Professional Responsibility seeking to prevent the board from continuing disciplinary proceedings against him, claiming he is being targeted for, among other things, his political activism (*see Klayman v. Board on Prof'l Responsibility*, 2024-CAB-000048); (3) the District of Columbia filing a consumer protection lawsuit against an advertising/marketing firm it alleged had a role, working directly with Purdue Pharma, Inc., in fueling the opioid crisis (*see District of Columbia v. Publicis Health L.L.C.*, 2024-CAB-000683); (4) a business suing Nevada Senate candidate Jeffrey Gunter alleging unpaid fees under a campaign fundraising management services contract (*see The Morning Group, LLC v. Dr. Jeff Gunter for Senate, et al.*, 2024-CAB-000722); and (5) an individual suing under District consumer protection laws alleging that the defendant's Himalayan salt products are mined in Pakistan rather than "deep" in the Himalayan mountains, as allegedly advertised (*see A. Kevin Fahey v. DVS Indus. d/b/a The Spice Lab*, 2024-CAB-000944). None of these cases was publicly available on receipt, delaying reporting.

**A First Amendment Right of Access
Attaches to Civil Complaints Upon Receipt**

38.     A qualified right of access grounded in the First Amendment applies to civil complaints.

39.     The analysis of a claim alleging a violation of the First Amendment right of access to court documents typically involves a two-step process. The first step is to determine whether, as a general matter, there is a First Amendment right of access to a particular court proceeding or document. If the answer to that question is "yes," the court proceeds to the second step, which is to determine if the restrictions on access to that court process or document satisfy constitutional standards. *See, e.g., Courthouse News Serv. v. Schaefer,* 2 F.4th 318 (4th Cir. 2021); *Courthouse News Serv. v. Planet,* 947 F.3d at 581, 589-97 (9th Cir. 2020) ("*Planet III*") (discussing and applying two-step process established by *Press-Enterprise Co. v. Superior Court* ("*Press-Enterprise II*"), 478 U.S. 1 (1986)). This Court too has applied the *Press-Enterprise II* test in recognizing First Amendment-based access rights, including in civil matters. *See Washington Post v. Robinson*, 935 F.2d 282, 288 (D.C. Cir. 1991) (applying two-step test in *Press-Enterprise II* regarding access to plea agreements); *In re Guantanamo Bay Detainee Lit.*, 630 F. Supp. 2d 1, 8-11, n. 16 (D.D.C. 2009) (applying *Press-Enterprise II* test, finding First Amendment access right to unclassified factual returns filed in civil habeas corpus proceedings, and recognizing that when both common law and constitutional access issues are raised controlling circuit law requires the constitutional issues be reached); *Nat'l Assoc. of Waterfront Emp'rs v. Chao*, 587 F. Supp. 2d 90, 98 (D.D.C. 2008) (recognizing that courts have found First Amendment-based right to civil trials).

40.     An apt example of application of the second step of the *Press-Enterprise II* test can be found in *Planet III*.  Applying that second step, *Planet III* determined that the clerk had failed to "demonstrate … that there is a 'substantial probability' that its [asserted] interest[s]" to support withholding access to new civil complaints until after administrative processing "would be impaired by immediate access, and … that no reasonable alternatives exist to 'adequately protect' that government interest." *Id*. at 596 (citing and quoting *Press-Enterprise* II, 478 U.S. at 14). The clerk's policy of withholding access to new civil complaints until after administrative processing

thus ultimately failed both prongs of the *Press-Enterprise II* test and violated Courthouse News' First Amendment right of timely access to new civil complaints. *See id*. at 596-600.

41.     On remand following *Planet III*, the district court entered an Amended Judgment for Declaratory and Injunctive Relief reflecting the holding from Planet *III* that a qualified First Amended right of timely access attaches "when new complaints are received by a court, rather than after they are 'processed.'" *CNS v. Planet*, No. CV-11-8083-DMG (FFMx), 2021 WL 1605216, at *1 (C.D. Cal. Jan. 26, 2021) ("*Planet* Amended Judgment"). Or as the Fourth Circuit put it in *Schaefer*, for example, clerks must carry their burden of establishing "unpreventable circumstances" justifies access delays, with any resultant access restrictions being narrowly tailored. *Schaefer,* 2 F.4th at 328-29.

42.     Accordingly, U.S. appellate and federal district courts nationwide have held that the First Amendment provides the press and public with a presumptive right of access to newly filed civil complaints at the time of their filing and have deemed "no-access-before-processing" policies unconstitutional. *See, e.g.*, *CNS v. Boyce*, No. 5:23-CV-280-FL, 2023 WL 7287878, at *4- *5 (E.D.N.C. Nov. 3, 2023) (in denying defendants' motion to dismiss, court found allegations that a "no-access-before-processing" policy which keeps complaints from public review triggered First Amendment right and additional allegations of alternative public access means created plausible inference that such a policy is not narrowly tailored nor necessary); *CNS v. O'Shaughnessy*, 663 F. Supp. 3d 810, 820 (S.D. Ohio 2023) (granting, on First Amendment grounds, preliminary injunction preventing clerk from restricting access to newly filed complaints until processing is complete and finding that "there are less restrictive means to accomplish Ms. O'Shaughnessy's goals than treating all complaints as confidential until accepted by the clerk"); *CNS v. Omundson*, 598 F. Supp. 3d 929, 944 (D. Idaho 2022) (First Amendment right attaches

"when the complaint is submitted to the respective e-filing system, ***not*** … once the documents are reviewed/accepted/processed by a clerk.") (emphasis in original); *CNS v. Cozine*, No. 3:21-cv-680-YY, 2022 WL 1000775, at *2 (D. Or. Apr. 4, 2022) ("…the right of access to civil complaints attaches when they are submitted to the court."); *CNS v. Gabel*, No. 2:21-cv-000132, 2021 WL 5416650, at *13 (D. Vt. Nov. 19, 2021) ("qualified First Amendment right of access attaches when a complaint is electronically filed"), *appeal filed*, No. 21-3098 (2d Cir. Dec. 17, 2021); *CNS v. N.M. Admin. Off. of the Cts.*, 53 F.4th 1245, 1269 (10th Cir. 2022) ("The New Mexico Courts' assertion that the press would not be harmed by waiting to access complaints until after processing, because '[e]ither way, the public can learn of new judicial proceedings,'…squarely contradicts the purpose of the right to timely access. Timeliness is not only an essential component of the right to access, but it is also an essential component of a journalist's line of work."); *Schaefer*, 2 F.4th at 328 (First Amendment requires any restriction on public access to complaints be necessary and narrowly tailored); *Planet III*, 947 F.3d at 596-97 and, on remand, *Planet* Amended Judgment ("This qualified right of timely access attaches when new complaints are received by a court, rather than after they are "processed" -- i.e., rather than after the performance of administrative tasks that follow the court's receipt of a new complaint."); *CNS v. Tingling*, No. 1:16-Civ-8742 (ER), 2016 WL 8739010, at p. 18 (S.D.N.Y. Dec. 16, 2016) ("…this Court finds that the clerk has failed to meet its burden of demonstrating that its policy of refusing to provide the public and press access to newly filed complaints until after they are reviewed and logged is either essential to preserve higher values or is narrowly tailored to serve that interest."); *CNS v. Jackson*, No. 4:09–CV–01844, 2010 WL 11546125, at *1 (S.D. Tex. Mar. 2, 2010) ("…the Court finds that Plaintiff has a right of timely access under the First Amendment to the U.S. Constitution to newly-filed petitions and other case-initiating documents, and that none of the justifications for delays presented by

Defendants during the course of these proceedings were sufficient to constitute a compelling or overriding interest that would overcome Plaintiff's First Amendment right of access.").

43.     In sum, "the qualified right of access to nonconfidential civil complaints arises when they are filed with the court…" *Planet III*, 947 F.3d at 594. And where this First Amendment right of access applies, it requires courts to make newly filed civil complaints available as "expeditiously as possible." *Schaefer*, 2 F.4th at 328. *See also Planet III*, 947 F.3d at 594 (public "access must be "timely" so to remain "newsworthy and to allow for ample and meaningful public discussion regarding the functioning of our nation's court systems.").

### Clerk Dempson Cannot Justify Her Practice of Restricting Access to Newly E-Filed Civil Complaints Until After Administrative Processing

44.     Where, as here, the First Amendment right of access applies, it attaches upon receipt, and any restriction on access must be justified under constitutional standards. *Id.* at 328-329.

45.     Under *Press-Enterprise II,* once the access right attaches, defendants must establish "closure is essential to preserve higher values and is narrowly tailored to serve those interests." *Press-Enterprise II*, 478 U.S. at 13-14; *accord Planet III*, 947 F.3d at 596; *Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132, 141 (2d Cir. 2016). *See also In re Guantanamo Bay Detainee Litigation*, 630 F. Supp. 2d at 9.  Here, Defendant's policies do not preserve higher values and, even if they do, they are not narrowly tailored.

46.     The continuing denial of access to newly e-filed complaints until administrative processing is complete causes significant and continuous access delays to court records in the D.C. Superior Court. Unlike federal district courts and many state courts, Clerk Dempson does not make newly e-filed complaints available upon receipt. Instead, she restricts complaints until after staff have administratively processed them. As a direct result, there are substantial and continuous

delays between the e-filing of a new complaint and when it is made available to the press and public.

47.     Withholding access is unnecessary and easily avoidable, as demonstrated by the on-receipt access provided by federal and state courts across the country using alternatives that are readily available to Clerk Dempson, including implementing a PRT, Auto-Accept Review, or API through Tyler's Odyssey File & Serve software platform.

48.     Historically, reporters covering courts could review and report on newly filed, paper civil complaints on their receipt. This access generally occurred via a media box, bin, or cart available to the press regardless of whether the complaints had been docketed (or "processed" – the term now often used by courts). Put another way, on the same 8th Circuit U.S. Court of Appeals panel where in 2022 Judge Bobby Shepherd described this tradition of access in Courthouse News' First Amendment litigation for access to complaints in Missouri, Judge Ralph Erickson, also speaking from the bench, described it as follows:  "What we're saying is that, oh, for about 230 years, you can walk into a…courthouse, into the clerk's office, and say, 'Hey, can I see what's been filed today?'"

49.     E-filing makes it even easier for courts to provide on-receipt access to new complaints. Instead of basic intake work being done by clerks at an intake counter, that work is now done by filers through the e-filing software used to enter case information and whatever minimum submission requirements the court specifies before submitting their e-filings to the court. Based on the case designation supplied by the filer, the e-filing software can sort new complaints and automatically make them available to the press and public upon their receipt by the court.

50.     The vast majority of federal courts and many state courts configure their e-filing and case management systems to automatically allow access to civil complaints upon their receipt

by the court. The systems that provide this access have been developed by at least ten different private and government software creators. These systems share one critical attribute: they provide access on receipt. Clerks conduct administrative tasks afterward, as their schedules permit.

51.     As noted above, within that group of e-filing systems, Tyler has developed and licensed at least three alternative methods for providing press and public access on receipt. These three alternatives are: (1) the PRT, an electronic in-box which also provides on-receipt access to new civil complaints; (2) Auto-Accept Review which, upon its receipt, automatically accepts a new civil complaint into the public docket for the case, allowing for public viewing; and (3) an API that allows the courts to program a press review queue either themselves or through a contractor. Tyler has installed Auto-Accept Review in several courts, including Clark County Superior in Las Vegas, Nevada. It has developed and installed a PRT in states such as California, Georgia, Nevada, Texas, and Vermont.

52.     New Mexico which uses Tyler as an efiling vendor has recently agreed to provide on-receipt access through statewide review queue, either built in-house or put in place through Tyler. The settlement containing those terms followed a First Amendment action filed in the U.S. District of New Mexico by Courthouse News. Missouri is also in the process of switching to an auto-accept system statewide, built in house, that will provide on-receipt access to press and public. The settlement containing those terms followed First Amendment litigation by Courthouse News in the U.S. Eastern District of Missouri and the U.S. Eighth Circuit Court of Appeals. Individual Ohio courts in Columbus and Cleveland recently established on-receipt review queues for new pleadings, using vendors in Columbus and Cleveland. The settlements containing those terms followed First Amendment actions filed by Courthouse News in the Southern and Northern Districts of Ohio. As mentioned above, Iowa has agreed to set up a statewide on-receipt civil

complaint in-box for journalists, although the settlement has not yet been signed by all parties. The plan to set up a statewide in-box follows a First Amendment claim filed in U.S. District Court for Iowa by Courthouse News.

53.     Despite Courthouse News' October 2023 request to Clerk Dempson, she has neither responded nor implemented any Tyler-based technology at her disposal that would permit access on receipt. Meanwhile, Courthouse News continues to experience delays in access to newly e-filed civil complaints because of her policy and practice of restricting access to them until after processing.

54.     Clerk Dempson cannot satisfy her burden of justifying this restriction of access to newly e-filed civil complaints under constitutional scrutiny. *See Schaefer,* 2 F.4th at 328-29 (access right requires complaints to be made available as "expeditiously as possible," there was a lack of evidence of "unpreventable circumstances" justifying withholding the complaints, and any restrictions must be "narrowly tailored"); *Planet III*, 947 F.3d 596-597 ("The record shows that Ventura County's no-access-before-process policy bears no real relationship to the County's legitimate administrative concerns about privacy and confidentiality, accounting protocols, quality control and accuracy, efficient court administration, or the "integrity" of court records. The record shows that the no-access-before-process policy resulted in significant delays before the newly filed complaints found their way into the media bins and that these delays were unrelated to Ventura County's asserted administrative interests."). Clerk Dempson cannot constitutionally justify her policies and practices of sealing access to these complaints until after "processing." Clerk Dempson also cannot establish that her policy and practice is narrowly tailored because her office already possesses or has access to one of many readily-available alternatives capable of meeting court needs while at the same time providing on-receipt public access to newly e-filed complaints.

## COUNT ONE

### Violation of U.S. Const. Amend. I and 42 U.S.C. § 1983

55.     Courthouse News incorporates the allegations of Paragraphs 1-54 herein.

56.     Clerk Dempson's actions under color of state law, including without limitation her policy and practice of withholding newly filed civil complaints from press and public view until after administrative processing, and the resulting denial of access to new civil complaints upon their receipt for filing, deprives Courthouse News, and by extension its readers, of their right of access to court records secured by the First Amendment.

57.     The presumption of access to new civil complaints, which arises when those complaints are filed in D.C. Superior Court, may be restricted only if closure is essential to preserve higher values and is narrowly tailored to serve those interests. *Planet III*, 947 F.3d at 594-95 (citing *Press-Enterprise II*). For Clerk Dempson's no-access-before-processing policy to "survive *Press-Enterprise II*'s two-prong balancing test," she "must demonstrate that there is a 'substantial probability' that its [asserted] interest[s]… would be impaired by immediate access, and second, that no reasonable alternatives exist to 'adequately protect' that government interest." *Planet III*, 947 F.3d at 596. Clerk Dempson cannot satisfy this test. *See, e.g.*, *Schaefer,* 2 F.4th at 328-29; *Planet III*, 947 F.3d 596-597.

58.     Courthouse News has no adequate remedy at law to prevent or redress Clerk Dempson's unconstitutional actions and will suffer irreparable harm as a result of her violation of its First Amendment rights. Courthouse News is therefore entitled to a declaratory judgment and a permanent injunction to prevent further deprivation of the First Amendment rights guaranteed to it and its subscribers.

## **PRAYER FOR RELIEF**

WHEREFORE, Courthouse News prays for judgment against Clerk Dempson as follows:

1.      A declaratory judgment pursuant to 28 U.S.C. § 2201 declaring Clerk Dempson's policy and practice that knowingly restricting access to newly e-filed civil complaints, including, inter alia, her policy and practice of denying access to complaints until after administrative processing, is unconstitutional under the First and Fourteenth Amendments to the United States Constitution because this policy and practice constitutes an effective denial of public access on receipt to new civil complaints, which are public court records to which the First Amendment right of access applies;

2.      A permanent injunction against Clerk Dempson, including her agents, assistants, successors, employees, and all persons acting in concert or cooperation with her, or at her direction or under her control, prohibiting her from continuing her policy and practice that denies Courthouse News access on receipt to new civil complaints, including, *inter alia*, her policy and practice of denying access to complaints until after administrative processing;

3.      An award of costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

4.      All additional and further relief this Court deems just and proper.

Dated: March 13, 2024                    Respectfully submitted,


                                         */s/ Patrick J. Curran Jr.*
                                         **DAVIS WRIGHT TREMAINE LLP**
                                         Patrick J. Curran Jr.
                                         D.C. Bar # 1026302
                                         Lauren M. Harris
                                         D.C. Bar # 1740251
                                         1301 K Street NW
                                         Suite 500 East
                                         Washington, D.C. 20005
                                         Telephone: (202) 973-4241
                                         patcurran@dwt.com
                                         laurenharris@dwt.com

                                         -and-

                                         **THOMAS & LOCICERO PL**
                                         Carol Jean LoCicero (pro hac
                                         vice forthcoming)
                                         Florida Bar # 603030
                                         Mark R. Caramanica (pro hac vice
                                         forthcoming)
                                         Florida Bar # 110581
                                         601 South Boulevard
                                         Tampa, FL 33606
                                         Telephone: (813) 984-3060
                                         clocicero@tlolawfirm.com
                                         mcaramanica@tlolawfirm.com
                                         tgilley@tlolawfirm.com
                                         jvanderhorst@tlolawfirm.com

                                         Daniela Abratt-Cohen (pro hac vice forthcoming)
                                         Florida Bar # 118053
                                         915 Middle River Drive, Suite 309
                                         Fort Lauderdale, FL 33304
                                         Telephone: (954) 703-3418
                                         dacohen@tlolawfirm.com

                                         *Attorneys for Courthouse News Service*